**FFIN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **MADISON WEST,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:24-cv-01219** |
| | ) | **Judge Aleta A. Trauger** |
| **JPMORGAN CHASE N.A.,** | ) | |
| **JAMIE DIMON, ASHLEY BACON,** | ) | |
| **AND ELGA DUARTE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

Before the court are plaintiff Madison West's Objections (Doc. No. 48) to the Magistrate Judge's Report and Recommendation ("R&R") (Doc. No. 47), in which the Magistrate Judge recommends that the plaintiff's Motion to Compel Arbitration (Doc. No. 24) be denied, that the defendants' Motion for Summary Judgment (Doc. No. 36) be granted, that other pending motions (Doc. Nos. 30, 45) be denied as moot, and that this case be dismissed with prejudice. The defendants have filed a Response (Doc. No. 49) to the plaintiff's Objections, and the plaintiff filed a Reply (Doc. No. 52).

For the reasons set forth herein, the court will overrule the plaintiff's Objections, accept the R&R, deny the plaintiff's Motion to Compel Arbitration, and grant the defendants' Motion for Summary Judgment.

## I.    STANDARD OF REVIEW

Within fourteen days after being served with a report and recommendation as to a dispositive matter, any "party may serve and file specific written objections to [a magistrate judge's] proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). The district court

must review *de novo* any portion of the report and recommendation "that has been properly objected to." Fed. R. Civ. P. 72(b)(3). In conducting its review, the district court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*

However, the district court is not required to review—under a *de novo* or any other standard—those aspects of the report and recommendation to which no objection is made. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). The district court should adopt the magistrate judge's findings and rulings to which no specific objection is filed. *Id.* at 151. "The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001); *see also Langley v. DaimlerChrysler Corp.*, 502 F.3d 475, 483 (6th Cir. 2007) (issues raised in a "perfunctory manner, unaccompanied by some effort at developed argumentation," are waived (quoting *Indeck Energy Servs., Inc. v. Consumers Energy Co.*, 250 F.3d 972, 979 (6th Cir. 2000))). Likewise, "[a] general objection to the entirety" of a magistrate judge's report and recommendation has the same effect as a complete failure to object. *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Finally, arguments made in an objection to a magistrate judge's report and recommendation that were not first presented to the magistrate judge for consideration are deemed waived. *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000).

Although *pro se* pleadings and filings are held to less stringent standards than those drafted by lawyers, *see, e.g.*, *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), *pro se* litigants are not entirely exempt from the requirements of the Federal Rules of Civil Procedure. *See, e.g.*, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

## II.    BACKGROUND

Plaintiff Madison West originally filed suit against JPMorgan Chase Bank, N.A. ("Chase") and three individual Chase employees in the Circuit Court for Davidson County, Tennessee; the defendants removed to this court based on diversity jurisdiction. (Compl., Doc. No. 1-1.) The Complaint asserted four claims for relief in association with Chase's closing five accounts the plaintiff had opened with Chase, after the plaintiff fell victim to a crypto-currency scam that caused her to lose over $24,000. (*Id.* ¶¶ 3.1–3.5.) These claims included Wrongful Closure of Bank Account (Count I); Defamation of Character (Count II); Slander (Count III); and Criminal Profiling (Count IV). (*Id.* §§ 5–8.)

Following removal, the defendants promptly moved to dismiss all claims set forth in the Complaint, and the Magistrate Judge issued a Report and Recommendation, recommending that the motion be granted in its entirety. The plaintiff filed objections to that recommendation, and this court sustained in part those objections and rejected in part the recommended dismissal. Specifically, the court granted that part of the defendants' Motion to Dismiss seeking dismissal of Counts II, III, and IV, for failure to state a claim for which relief may be granted, but denied the motion with respect to Count I, for Wrongful Closure of Bank Account, because the defendants' Motion to Dismiss relied on matters outside the pleadings. (Doc. Nos. 27, 28.)

The Deposit Account Agreement ("DAA") containing the arbitration clause at issue was filed with the defendants' Motion to Dismiss. (Doc. No. 10-1 at 18, 42.) The plaintiff did not acknowledge it in her Response to the Motion to Dismiss. (Doc. No. 12.) In her construed objections to the first Report and Recommendation, the plaintiff asserted both that she had never received a copy of the DAA when opening her accounts with Chase and that she had "request[ed] Arbitration to no avail" prior to filing suit and had only filed her state court lawsuit because Chase failed to respond to her request for arbitration. (Doc. No. 22 at 2–3.) She incorporated a request

for arbitration in her construed objections (*id.* at 9) and then filed separately her Motion to Compel Arbitration under the DAA's arbitration provision, effectively admitting that she and Chase had entered into the DAA each time she opened an account (Doc. No. 24 at 2). However, in her Supplemental Memorandum in Support of Motion to Compel Arbitration, which is actually a declaration sworn under penalty of perjury, the plaintiff attests that, while she did not receive the DAA when she opened her accounts, she did locate a copy of it online *before* filing suit and, based on the arbitration agreement she discovered, "made sincere efforts to initiate arbitration directly with [Chase's] Executive Office and Legal Department." (Doc. No. 29 at 1–2.)[1] The plaintiff also states that her Motion to Compel Arbitration is not intended as a "blanket adoption of the DAA or an admission that its terms govern [her] relationship with [Chase]. Rather, [she] request[s] arbitration conditionally: If Defendants assert the DAA as binding for purposes of account closure, then they must also honor its arbitration clause." (*Id.* at 2.) She denies attempting to "have [her] cake and eat it too" and insists that she is simply requesting "equitable application of the agreement's terms." (*Id.*)

The court declined to address the plaintiff's claim regarding arbitration in her construed objections, both because she had not presented the issue to the Magistrate Judge and because she had filed a separate Motion to Compel Arbitration. (Doc. No. 27.) The defendants responded to the plaintiff's Motion to Compel Arbitration by arguing that she had waived arbitration by raising the issue for the first time in her objections to the Report and Recommendation and, further, that she waived her right to enforce arbitration by filing this lawsuit and litigating on the merits for eight months before raising the issue of arbitration. (*See generally* Doc. No. 25.)

---

[1] The DAA's arbitration clause explains how to initiate arbitration. (*See* Doc. No. 36-1 at 42.)

The defendants also filed their Motion for Summary Judgment, seeking judgment in their favor on the same grounds raised in their Motion to Dismiss: that by signing the Signature Card for each deposit account, the plaintiff acknowledged that she had "read and agree[d] to the Online and Mobile E-Sign Disclosure and Consent Agreement, Digital Services Agreement, *Deposit Account Agreement* and Tax info" and that the DAA for each account provided that both the account holder and Chase had the right to close any account (other than a CD) "at any time for any reason or no reason without prior notice." (Doc. No. 38 at 2 (citing Signature Cards, Doc. No. 36-1 at 4–15, and DAA, Doc. No. 36-1 at 37).) The plaintiff, in her Response to the defendants' Statement of Undisputed Material Facts, admits that she signed the forms presented by Chase but "disputes that she was provided a meaningful opportunity to review or understand the referenced agreements at the time of signing." (Doc. No. 40, Resp. to ¶ 4; *see also* Doc. No. 40-1, West Decl. ¶ 4.)

The R&R, first, recommends that the defendants' Motion for Summary Judgment be granted on the grounds that the plaintiff's signature on the Signature Cards is binding pursuant to Tennessee law, Tenn. Code Ann. § 47-10-107(a)–(d), and that her signature established as a matter of undisputed fact that she had read and agreed to the DAA and other documents when she opened her accounts. (Doc. No. 47 at 5.) The R&R further finds that the DAA states unequivocally that either party may close the accounts at any time, for any reason, without notice, as a result of which the plaintiff's claim for "Wrongful Closure of Accounts" fails as a matter of law. (*Id.*)

The R&R expressly rejects the plaintiff's arguments that a material factual dispute forecloses summary judgment. The R&R construes the plaintiff's statement that she was not provided a "meaningful opportunity" to review or understand the DAA as an admission that she had, in fact, had an opportunity to review the DAA and, therefore, that she is bound by it. (*See id.*

at 6 ("One who signs a contract cannot later plead ignorance of its contents if there was an opportunity to read it before signing." (first quoting Doc. No. 40 at 1–2, and then quoting *Moody Realty Co., Inc. v. Huestis*, 237 S.W.3d 666, 676 (Tenn. Ct. App. 2007)).)

The Magistrate Judge then considered the Motion to Compel Arbitration, noting that the plaintiff had filed the motion in the "interim period after the [Magistrate Judge] issued [his] R&R recommending dismissal and before the district judge rendered a ruling." (*Id.* at 7.) Applying the test for waiver under Tennessee law, the R&R finds that the plaintiff's actions demonstrate an intentional relinquishment of the right to arbitrate, specifically noting that the plaintiff commenced this action in state court in September 2024, seeking relief on the merits without mentioning or reserving her right to arbitrate, and then litigated the matter in this court for eight months before finally invoking a right to arbitrate after the Magistrate Judge recommended dismissal of all of her claims. (*Id.* at 8.)

The plaintiff objects to both of these recommendations.

## III.    DISCUSSION

### A.    The Plaintiff's *Pro Se* Status

The plaintiff's first objection is that the Magistrate Judge failed to accord sufficient lenience to her as a *pro se* litigant and violated this court's directive that the Magistrate Judge "assist the plaintiff with . . . all other matters necessary for having the case prepared to be tried on the date set." (Doc. No. 48 at 1 (citing Doc. No. 35).) She complains, generally, that the R&R fails to acknowledge her status as a *pro se* litigant and does not liberally construe her filings, as required by Supreme Court precedent.

The Order the plaintiff cites is the undersigned's standard order setting a trial date and directing the Magistrate Judge to assist the *pro se* plaintiff prepare for trial if, in fact, the case proceeds to trial (*See* Doc. No. 35.) The R&R in no way contravenes that Order. Nor has the

plaintiff pointed to any specific instance in which the R&R fails to liberally construe her pleadings. Regardless, the plaintiff's status as a *pro se* litigant does not reduce her burden at the summary judgment stage. The Sixth Circuit has repeatedly recognized that "a party's 'status as a *pro se* litigant does not alter his duty on a summary judgment motion' to present evidence demonstrating a material issue for trial." *Curran v. Wepfer Marine Servs., Inc.*, No. 23-5284, 2024 WL 4489916, at *4 (6th Cir. May 20, 2024) (quoting *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); and citing *United States v. Ninety Three Firearms*, 330 F.3d 414, 427-28 (6th Cir. 2003)). This objection is without merit.

### B.      Preservation of Right to Arbitrate

The plaintiff characterizes the R&R as stating that the plaintiff "waited too long" to invoke arbitration, and she asserts that filing suit in state court cannot constitute waiver "because removal terminates the state proceeding." (Doc. No. 48 at 2.) She insists that she properly moved to compel arbitration in this court, consistent with the DAA and that the "record contains **no evidence** of intentional relinquishment of the right to arbitrate." (*Id.*)

The R&R does not, in fact, state that the plaintiff simply "waited too long" to invoke arbitration, but the court reviews *de novo* the recommendation that the plaintiff's Motion to Compel Arbitration be denied. "[C]ourts asking whether a party has waived a right to arbitrate should not . . . apply ordinary waiver rules, looking for the 'intentional relinquishment or abandonment of a known right.'" *Schwebke v. United Wholesale Mortg. LLC*, 96 F.4th 971, 974 (6th Cir. 2024) (quoting *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022)). "Because a party does not often express its intent to waive a right, however, [courts] infer that intent when a party 'takes actions that are completely inconsistent with any reliance on [its] arbitration agreement." *In Re Chrysler Pacifica Fire Recall Prods. Liab. Litig.*, 143 F.4th 718, 723–24 (6th Cir. 2025) (quoting *Solo v. UPS Co.*, 947 F.3d 968, 975 (6th Cir. 2020)).

"Under ordinary waiver rules, a party cannot waive a right unless he first knows that right exists." *Id.* at 724 (citing *Schwebke*, 96 F.4th at 974). At the same time, however, "[e]ven in the absence of actual knowledge," a party may waive its right to arbitrate if it "had all the information that it needed to determine its arbitration rights but negligently failed to do so." *Id.* (citing *Solo*, 947 F.3d at 976). Thus, in *In Re Chrysler Pacifica*, the Sixth Circuit reversed the district court's order finding that the defendant had waived its arbitration rights, where it was undisputed that the defendant did not know, and could not have known, about underlying arbitration agreements between the plaintiffs and third-party dealers until conducting discovery. *Id.* at 724–25. On the other hand, in *Solo*, the court found that, irrespective of the defendant's *actual* knowledge of the relevant arbitration provisions, the defendant "knew or should have known all the information necessary to advance" its arguments in favor of arbitration even before filing its motion to dismiss. *See Solo*, 947 F.3d at 976 ( "[A] litigant cannot be held estopped to assert a defense, or to have waived his right thereto, because of facts he does not know, unless, as a matter of judicial policy, we are ready to say he 'should' know them." (quoting *Keys v. Pace*, 99 N.W.2d 547, 552–53 (Mich. 1959))).

In this case, the plaintiff's filing a lawsuit in state court, defending against a motion to dismiss on the merits after the case was removed to federal court, and then filing objections to a report and recommendation are, considered together, "actions that are completely inconsistent with any reliance on [an] arbitration agreement." *In Re Chrysler Pacifica*, 143 F.4th at 723–24. The question then is whether the plaintiff knew about the arbitration agreement such that her actions constitute an *intentional* relinquishment of a known right. The plaintiff denies knowledge of the DAA, but she concedes that she "discover[ed] an online version" of the DAA "while preparing litigation" and allegedly "requested" arbitration based on that discovery before filing her lawsuit.

(Doc. No. 48 at 3.) She appears to have abandoned her request for arbitration by filing suit rather than pursuing the procedure for initiating arbitration outlined in the DAA. In addition, as the Magistrate Judge found (and as discussed below), there is no dispute that the plaintiff signed the Signature Cards when she opened her accounts, acknowledging that she had "read and agree[d] to the . . . Deposit Account Agreement," which contains the arbitration provision. (Signature Cards, Doc. No. 36-1 at 4–15; DAA, Doc. No. 36-1 at 37).) As the Magistrate Judge found, the plaintiff denies a "meaningful" opportunity to review the DAA, but she does not deny having an opportunity to review it.

Under Tennessee law, it is well established that "a person who signs a contract is presumed to understand the terms of the agreement that he has signed." S*kaan v. Fed. Express Corp.*, No. W2011-01807-COA-R3-CV, 2012 WL 6212891, at *8 (Tenn. Ct. App. Dec. 13, 2012) (citing *DeFord v. Nat'l Life & Accident Ins. Co.*, 185 S.W.2d 617, 621 (Tenn. 1945)); *see also Philpot v. Tenn. Health Mgmt., Inc.*, 279 S.W.3d 573, 581 (Tenn. Ct. App. 2007) ("A party is presumed to know the contents of a contract he has signed." (citations omitted)). The plaintiff, by signing the Signature Cards, is presumed to have read and understood the DAA and, therefore, to have known about the arbitration provision in the DAA. Further, she admits that she had discovered the DAA on her own, prior to filing suit and that she requested arbitration before filing suit—without pursuing the steps necessary to initiate an arbitration proceeding. Under these circumstances, the court finds that the plaintiff, at a minimum, had constructive knowledge of her right to arbitrate before filing suit, and her actions in pursuing recourse through the courts instead of through arbitration constitute the "intentional relinquishment or abandonment of a known right." *Schwebke*, 96 F.4th at 974.

This conclusion is corroborated by the plaintiff's indication that she only wants to enforce the DAA's arbitration provision if the defendants insist on enforcing the DAA's substantive clause providing that either party had the right to close the accounts at issue at any time, without notice. In other words, the plaintiff wants to have it both ways—to enforce the arbitration agreement only if doing so means she can avoid dismissal of her claim but to disclaim a right to arbitrate if that means she can continue to pursue her claim in court. This attempt to conditionally enforce the arbitration provision, standing alone, is conduct signaling intentional relinquishment of a known right. The plaintiff simply is not entitled to have it both ways.

For these reasons, the court will overrule the plaintiff's objection and accept the Magistrate Judge's recommendation that the plaintiff's Motion to Compel Arbitration be denied.

### C.    Joint Status Report

The plaintiff insists that she has complied in good faith with the court's settlement requirements and wishes the record to reflect that she has done so. This is not a substantive objection to the R&R, which does not address the issue of settlement. The parties' joint status report regarding attempts to resolve the case is not due under the Initial Case Management Order until February 27, 2026. (Doc. No. 34 at 3.) The defendants exercised their right to file an early dispositive motion, and they had no obligation to pursue settlement of the plaintiff's claims prior to the resolution of that motion. This objection, such as it is, is overruled.

### D.    Motion for Summary Judgment

The plaintiff's primary objection to the recommendation that the defendants' Motion for Summary Judgment be granted is that her denial of having received the DAA electronically when she opened her Chase accounts creates a material factual dispute that precludes summary judgment. As indicated above, Tennessee law forecloses this argument. The plaintiff acknowledges signing the Signature Cards and admits that in doing so she confirmed that she had

read and agreed to the DAA; she does not deny that she had an opportunity to review the DAA, she simply claims she did not get a copy of it and did not have an opportunity to "meaningfully" review it. (*See* Doc. No. 40-1, West Decl. ¶ 3.)

Under Tennessee law, "[o]ne who signs a contract cannot later plead ignorance of its contents if there was an opportunity to read it before signing." *Moody Realty Co.*, 237 S.W.3d at 676 (citing *Solomon v. First American Nat'l Bank*, 774 S.W.2d 935, 943 (Tenn. Ct. App. 1989)). A party cannot "enter a contract and then seek to avoid performance because he did not read the agreement or know its contents." *Id.* (citing *Giles v. Allstate Ins. Co.*, 871 S.W.2d 154, 157 (Tenn. Ct. App. 1993)). "Otherwise, written contracts would be worthless." *Id.* The plaintiff's assertion now that she was not provided a *meaningful* opportunity to review the DAA is not sufficient to overcome the presumption that she had, and could have availed herself of, the opportunity to read the agreement she entered when she signed the Signature Cards.

The plaintiff also points to other purportedly material factual disputes, including:

• Whether the account freezes violated Regulation CC;

• Whether proper notice was given before closure;

• The conduct and involvement of individual defendants;

• Conflicting reasons for closure.

(Doc. No. 48 at 4.) These latter objections are readily resolved. The plaintiff has never stated a claim or raised an argument based on "Regulation CC," and she cannot do so for the first time in objections to a report and recommendation. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006); *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000). Whether notice was given and the reasons for closure of the accounts are both irrelevant, given that the DAA

provides for closure for any reason and without notice.[2] The individual defendants' conduct is likewise irrelevant, as the plaintiff's claim is for "Wrongful Closure of Account," which is clearly barred by the DAA.

## IV.   CONCLUSION

For the reasons stated above, the plaintiff's Objections (Doc. No. 48) will be overruled, and the R&R (Doc. No. 47) will be adopted in its entirety. The plaintiff's Motion to Compel Arbitration (Doc. No. 24) will be denied; the defendants' Motion for Summary Judgment (Doc. No. 36) will be granted; and all other pending motions will be denied as moot. An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge

---

[2] Aside from this, the plaintiff's admission that she had been the victim of a crypto-currency scam (Compl. ¶ 3.25) and likely would have lost more but for the bank's intervention establishes a reasonable basis for the bank to place a temporary hold on the plaintiff's accounts and ultimately to close them. The merits of the plaintiff's "Wrongful Closure" claim are not before the court, but the court nonetheless entertains serious doubts as to its viability, even if the DAA did not bar the claim.